## STATE OF CONNECTICUT *v.* DONALD SMITH
### (11897)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, JS.

Argued October 9—decision released December 24, 1985

*James E. Swaine,* for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Donald Smith, was charged in an indictment with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A).[1] He was convicted by a jury of that charge. The same jury convicted him of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A)[2] and of assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[3] crimes that were charged in an information and which stemmed from the same incident as the charge of kidnapping. The defendant was sentenced by the trial court to consecutive terms totaling twenty-eight and one-half years to life imprisonment. The defendant has appealed his conviction claiming that: (1) the trial court erred in "accepting" the jury's verdict of guilty of the charge of

---

[1] General Statutes § 53a-92 (a) (2) (A) provides: "Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when: (1) His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-72a (a) (1) (A) provides: "Sec. 53a-72a. SEXUAL ASSAULT IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person . . . ."

[3] General Statutes § 53a-61 (a) (1) provides: "Sec. 53a-61. ASSAULT IN THE THIRD DEGREE: CLASS A MISDEMEANOR. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

kidnapping because there was a variance between the charge as set forth in the indictment and the proof at trial; (2) the trial court erred in denying the defendant's motion "to limit the state's proof to the allegations of the indictment"; (3) he was denied effective assistance of counsel; and (4) the trial court erred in certain rulings on the evidence.

From the evidence adduced at the trial the jury could reasonably have found the following relevant facts: On May 22, 1981, the victim was sixteen years old and lived in West Haven. That afternoon, at about 2:30 p.m., she went to visit a girl friend who lived four houses away from her. During the visit, she met some of her friend's relatives, including the defendant, who was her friend's uncle. The defendant was forty-two years old at the time of the incident and resided in Massachusetts. During the afternoon, the defendant drove the victim and his niece in his pickup truck from his niece's home to a house several blocks away where his niece had to care for some cats. While his niece fed the cats, the victim remained in the truck with the defendant. On the return trip, the defendant drove past the victim's house and dropped his niece off at her house. The defendant had said earlier that he was returning to Massachusetts as soon as he dropped his niece off. He also had told the victim that she was a "pretty girl" and a "very attractive girl" and had asked her to return to Massachusetts with him. She declined the invitation.

After leaving his niece at her house, the defendant drove the victim the short distance to her home. He parked and asked her for directions to the highway, interstate 95. The victim gave the requested directions, but the defendant said he wanted her to go with him to show him the entrance. He told her that once he had located the highway he would turn around and bring her back home. The victim informed the defendant that she did not have time because she had to get ready to

go to a funeral. The defendant insisted, however, that she accompany him, and when she opened the door to exit the truck the defendant accelerated and the door flew shut. At this point, the victim acquiesced in the defendant's request and remained in the truck while she directed the defendant to interstate 95. During the ride the defendant told the victim that he would turn around and bring her home when they reached the City Point Yacht Club. The defendant, however, continued driving when he reached the entrance to interstate 95 and then drove onto the highway. Once on the highway, the victim repeatedly asked the defendant to take her home, but he ignored her or told her to "shut up" and continued driving. During the ride the defendant threatened her with a gun which she described as silver with a black piece on the handle. He also showed her pornographic magazines.

Eventually the defendant brought the victim to a dirt road in a wooded area off East Johnson Road in Cheshire. Once there, he ordered her to take off her clothes. When she refused he struck her, held a knife to her throat and cut and tore her clothing. In the face of the defendant's threats, the victim removed most of her clothing and the defendant sexually abused her. He then choked her until she was unconscious and left her partially clothed in the wooded area. When the victim regained consciousness, she made her way to East Johnson Road where a passing motorist picked her up and gave her a ride back to her parents in West Haven.

The victim's mother testified that, when she saw her daughter, she appeared to have been "terribly beaten" and her clothes were torn. John Loeffler, a physician who examined the victim at Yale-New Haven Hospital that evening, testified that she was "tearful," that she had "a number of injuries" and that she appeared to have been strangled. The victim identified the defendant as her abductor.

The indictment accused the defendant of kidnapping in the first degree and charged that, "at the *City of West Haven* on May 22, 1981," (emphasis added) the defendant abducted the victim and restrained her with the intent to inflict physical injury upon her and to violate and abuse her sexually in violation of General Statutes § 53a-92 (a) (2) (A).

The defendant first claims that there was a variance between the indictment and the proof offered at trial and that he was prejudiced thereby. He argues, therefore, that the court erred in "accepting" the jury verdict of guilty to the charge of kidnapping. This claim is premised on the defendant's view that the victim originally agreed to accompany him and that she did not protest her presence in his truck or request to be returned to her home until his truck was on the entrance to interstate 95 in New Haven. Therefore, he claims that she was not restrained and abducted in the city of West Haven as alleged in the indictment. The defendant does not claim, as indeed he cannot, that the court lacked jurisdiction. General Statutes (Rev. to 1981) §§ 51-344 (4),[4] 51-352c.[5]

[4] General Statutes (Rev. to 1981) § 51-344 (4) provides: "Sec. 51-344. JUDICIAL DISTRICTS ESTABLISHED. For purposes of establishing venue, the superior court shall consist of the following judicial districts . . . (4) The judicial district of New Haven: The towns of Bethany, New Haven, Woodbridge, Cheshire, Hamden, Meriden, North Haven, Wallingford, Branford, East Haven, Guilford, Madison, North Branford and West Haven."

[5] "[General Statutes (Rev. to 1981)] Sec. 51-352c. (Formerly Sec. 54-41). JURISDICTION OF VARIOUS OFFENSES. No criminal prosecution shall fail by reason of the fact that the evidence may disclose the crime to have been committed in a town or judicial district adjoining that alleged in the indictment or information; and when any person is accused of committing any offense on the boundary or divisional line between any of the towns or judicial districts in the state, or so near thereto as to render it doubtful in which town or judicial district the offense was committed, the town or judicial district which first assumes jurisdiction by issuing process for the arrest and prosecution of the offender, whether the name of such offender is known or unknown, shall have exclusive jurisdiction to charge, present, indict, try, convict and sentence; and in such case it shall only be necessary for the

"This court will construe the evidence in the light most favorable to sustaining the [jury's] verdict and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom." *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982). The court correctly charged the jury that the "restraint" which is the basis of the crime of kidnapping must have been imposed on the victim without the victim's consent and that acquiescence secured by fraud or deception is not deemed consent. See General Statutes § 53a-91 (1) (a). The fact that the victim did not affirmatively and vocally protest her continued presence in the defendant's truck and request him to return her to her home until the truck entered upon interstate 95 in New Haven has no effect on the validity of the jury's verdict in this case. The jury could reasonably have found proved beyond a reasonable doubt that, while parked in front of her home in West Haven, the defendant requested the victim to accompany him to show him the entrance to interstate 95 and he promised to return her to her home when that was accomplished. The jury could also have found proved beyond a reasonable doubt that the defendant's request and promise were a ruse employed to lure the victim into his control and that she was therefore deceived into remaining with him. *People* v. *Valero,* 120 Misc. 2d 539, 542, 466 N.Y.S.2d 600 (1983). The fact that the victim did not know that she was being restrained is of no consequence. See *United States* v. *Hoog,* 504 F.2d 45, 51 (8th Cir. 1974); *State* v. *Colbert,* 221 Kan. 203, 557 P.2d 1235 (1976);

state, judicial district, town, city or borough to establish the venue alleged in the information, complaint, warrant or indictment by proving that the offense alleged was committed on the boundary of the judicial district or town wherein the accused is being tried or so near thereto as to render it doubtful in which town or judicial district the offense was committed. No provision of this section shall impair the right of the accused to obtain a change of venue."

*State* v. *Alston,* 294 N.C. 577, 588–89, 243 S.E.2d 354 (1978). The word "deception" as used in General Statutes § 53a-91 (1) (a)[6] implies that the victim did not know she was being restrained. See *State* v. *Colbert,* supra, 209. It is the intent of the accused which the state has to prove, not that of the victim. The jury therefore could have found that the victim was restrained and abducted in West Haven. There was no variance between the indictment and the proof adduced at trial.

Even if there had been a variance, the defendant has failed to demonstrate any resulting prejudice. "The defendant can gain nothing from his present claim without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done him because of the language of the [indictment]." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979). The defendant's claim of prejudice is that he was prevented from properly defending the indictment because the allegation that the kidnapping took place in West Haven prevented him from arguing that the restraint of the victim did not constitute kidnapping but rather was merely incidental to the crimes charged in the information which occurred in Cheshire. See *State* v. *Lee,* 177 Conn. 335, 343, 417 A.2d 354 (1979); *State* v. *Chetcuti,* 173 Conn. 165, 170, 377 A.2d 263 (1977).

"[T]he accused in a criminal proceeding has the right to be informed of the nature and cause of the accusation against him, and that the offense should be

---

[6] "[General Statutes] Sec. 53a-91. DEFINITIONS. The following definitions are applicable to this part: (1) 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (a) deception . . . ."

described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial." *State* v. *Sumner,* supra, 166. It is inconceivable to us how the defendant could have been misled as to the offense with which he was charged. Nor does his brief enlighten us as to why the allegation that West Haven was the place where the kidnapping occurred prevented him from making the claim he now asserts. Further, if the indictment had alleged that the kidnapping occurred in New Haven as the defendant seems to claim, we fail to understand how that would have benefited him in arguing that the kidnapping was merely incidental to the other crimes charged.

The defendant also claims that he was prejudiced because he was forced to structure his case, particularly cross-examination, on the basis of the allegation in the indictment. The bare assertion of prejudice, however, does not make it so. The defendant has failed to demonstrate how he was in fact prejudiced.

The defendant also claims that the court erred in denying his motion to limit the state's proof to the allegations of the indictment. He argues that the court should have excluded evidence of restraint of the victim which occurred outside the geographical boundaries of West Haven because the indictment alleged the victim was abducted and restrained in West Haven. He contends, therefore, that such evidence was "outside the scope of the indictment" and "irrelevant." We disagree.

"The state had to prove beyond a reasonable doubt that the defendant possessed the intent to commit the crime charged." *State* v. *Haddad,* 189 Conn. 383, 398, 456 A.2d 316 (1983). The burden of proof on intent "can be borne only by the presentation of circumstantial evidence, because intention is a mental process that neces-

sarily must be proved through inferences drawn from the defendant's statements and actions." *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979). The state was required to prove that the elements of kidnapping in the first degree existed when the defendant abducted the victim. That is, the state was required to prove that the defendant abducted the victim intentionally and unlawfully with the intent to inflict physical injury upon her or to abuse her sexually. The defendant's activities during the entire course of the incident were obviously relevant and probative and hence admissible for that purpose. Further, kidnapping by its nature is a continuing crime. *People* v. *LaMarca,* 3 N.Y.2d 452, 460, 144 N.E.2d 420, 165 N.Y.S.2d 753 (1957). The trial court therefore did not err in allowing evidence of restraint outside the confines of West Haven.

The defendant's claim of ineffective assistance of counsel is based on his assertion that his trial counsel failed to make any requests to charge or to take exception to the trial court's charge concerning his claim that the proof at trial did not conform to the allegations of the indictment. He also claims that trial counsel was ineffective because he failed to move for a judgment of acquittal challenging the sufficiency of the evidence to sustain a verdict on the indictment, apparently for the same reason. In view of our ruling on the defendant's first claim of error, it would appear that his claim of ineffective assistance of counsel is wholly without merit. *State* v. *McCarthy,* 197 Conn. 166, 177–78, 496 A.2d 190 (1985). A claim of ineffective assistance of counsel, however, is more appropriately the subject of a writ of habeas corpus or a petition for a new trial. While the defendant concedes this, he claims that the appellate record in this case supports a finding of ineffective assistance of counsel. We disagree. *State* v. *Vitale,* 197 Conn. 396, 497 A.2d 956 (1985).

The defendant's final claim is that the trial court erred in admitting into evidence the testimony of witnesses concerning an incident which occurred in the late evening of May 22 and the early morning of May 23 at Maggie's Bar in New Haven. Testimony was elicited by the state that the defendant was in Maggie's accompanied by another man. While there he became embroiled in an altercation with the owner, a customer and the bartender. Each was called as a witness and testified that during the course of the dispute the defendant displayed a gun and threatened the owner with it. They described the gun variously as a small silver automatic and a small silver handgun. They further testified that they saw the defendant with the gun inside the bar, but at one point he was taken outside with his companion and the gun disappeared. The bartender, Brian Doonan, also testified that the defendant, although he appeared to have been drinking, was in control of his faculties.

As a result of the disturbance the New Haven police were called. Officer Robert Benson responded and arrested the defendant for breach of the peace and threatening. Benson testified that after he arrested the defendant he searched him and found a pocket knife on his person. He identified it as the same knife which had earlier been identified by the victim as the knife with which the defendant had threatened her. The defendant objected to the admission of the testimony concerning the incident at Maggie's and his arrest on the ground that it was irrelevant and that, even if relevant, its prejudicial effect outweighed its probative value.

The rule concerning admission of evidence of other crimes is a rule of evidence and not of constitutional law. *State* v. *Periere,* 186 Conn. 599, 610, 442 A.2d 1345 (1982). "The state may introduce all legally competent evidence which aids the trier of fact in determining the

relevant issues." *State* v. *Howard,* 187 Conn. 681, 688 n.4, 447 A.2d 1167 (1982). "As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged." *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961). Evidence that tends to prove the commission of other crimes by the accused is not, however, inadmissible if it is otherwise relevant and material and if its probative value outweighs its prejudicial effect. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982).

If the trial judge, in the exercise of his judicial discretion, determines that the evidence is relevant and that its probative value outweighs its prejudicial effect, his decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. *State* v. *Johnson,* 190 Conn. 541, 549, 461 A.2d 981 (1983).

The fact that, within hours after the crime, the defendant had on his person a gun similar to that described by the victim and was in possession of the knife identified by the victim was certainly corroborative of the victim's testimony at trial; *State* v. *Brown,* 169 Conn. 692, 701, 364 A.2d 186 (1975); and was also relevant to establish the identity of the defendant. Also, the defendant's gun was never found and the incident at Maggie's tends to explain its disappearance. Further, there had been testimony at the trial that the defendant had been drinking throughout the day. Testimony that he was in control of his faculties late in the evening at a bar bore some relevancy to his condition earlier in the day. His condition was relevant to his ability to form an intent and intent was an element of the crimes with which the defendant was charged.

Obviously, the testimony of the witnesses concerning the gun, the knife and the defendant's condition had to be placed in some framework. Unfortunately,

the witnesses did not meet the defendant at a church social. They had contact with him and gained the information to which they testified because of a fight in a bar which resulted in the defendant's arrest. There was no way the information which the witnesses possessed could be conveyed to the jury and make sense unless it was placed in context. The trial court considered this when it ruled on the defendant's objection and allowed the testimony. The trial court also instructed the jurors that they were not to consider evidence that the defendant was involved in the incident or arrested for breach of the peace and threatening as evidence that he was a bad person or was guilty of the crimes for which he was on trial. Because the admission of such evidence involves judicial discretion, "[o]ur review is limited to whether [the] ruling exceeded the latitude accorded to the exercise of [such] discretion." *State* v. *Ibraimov*, supra. It did not.

There is no error.

In this opinion the other judges concurred.