STATE OF CONNECTICUT *v.* LARRY SCALES
(13622)

FOTI, LANDAU and SCHALLER, Js.

Argued March 20—decision released June 20, 1995

*Jeffrey D. Hutcoe,* assistant public defender, for the appellant (defendant).

*Lisa Herskowitz,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Anne F. Mahoney,* deputy assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes

§ 53a-103[1] and criminal mischief in the third degree in violation of General Statutes § 53a-117 (a) (1) (A).[2] On appeal, the defendant asserts that the state produced insufficient evidence for the jury to find him guilty of burglary in the third degree and criminal mischief in the third degree and that the trial court was thus obligated to render a judgment of acquittal with respect to those charges. In particular, the defendant claims that the evidence of identification was not sufficient to prove that he was the person who committed the crimes. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The Catholic Transcript building at 785 Asylum Avenue in Hartford had a security system in which Sonitrol employees used microphones installed in the basement to detect intruders. On September 19, 1993, at about 10:50 p.m., Sonitrol employees, while monitoring the Catholic Transcript building, heard the sound of something breaking. Immediately, they called Scott Parmalee, the business manager of Catholic Transcript and informed him of the noise. While on the telephone with Parmalee, the Sonitrol employees and Parmalee heard the sound of breaking glass. The Sonitrol employees told Parmalee that they had called the Hartford police.

The first to arrive at the Catholic Transcript building was Officer Neil Dryfe of the Hartford police. Dryfe proceeded on foot down the east driveway toward the rear of the building. His inspection revealed no disturbance of the windows and doors on the east wall of the

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-117 (a) provides in pertinent part: "A person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1) Intentionally . . . (A) damages tangible property of another . . . ."

building. Dryfe did notice, however, that a fire escape was down on the eastern wall of the building. He climbed the fire escape and searched the roof for entry points and suspects.

Officer Robert Cronin arrived at the Catholic Transcript building in his police cruiser shortly after Dryfe. Cronin pulled into the driveway on the east side of the building. He did not notice any open windows on that side of the building. When Cronin drove around to the back of the building, he observed a broken window on the rear wall.

The last officer to arrive at the scene was James Shearer. Shearer parked his police cruiser in front of the Catholic Transcript building. As Shearer exited his vehicle and began walking toward the east side of the building, he saw the defendant walking quickly around the northeast corner of the building. Shearer noticed that the defendant slowed down when he saw Shearer. He also noticed that a basement window in the east wall of the building was open. Shearer took the defendant into custody and put him in the back of his police cruiser.

After the defendant was placed in custody, the three police officers conferred about their independent searches of the premises. The officers determined that the open east window discovered by Shearer had been closed when Dryfe and Cronin initially checked it. They also learned that the window could be opened only from the inside. The officers agreed that they had not seen any other people in the area of the Catholic Transcript building on this Sunday evening. An in-depth search of the premises revealed a sneaker print in a dusty area of the basement with a Nike logo visible in the middle of the print. A check of the defendant's sneakers revealed the same Nike logo and tread pattern as the print found in the basement. The search of the premises also

revealed a broken skylight window on the roof of the building and another shoe print with the same Nike logo.

The defendant claims that the evidence was insufficient to form the basis of a conviction for burglary in the third degree and criminal mischief in the third degree. The defendant concedes that the state established the fact that a burglary and criminal mischief had occurred on September 19, 1993. He claims, however, that the state's evidence was insufficient to establish that it was he who had entered the Catholic Transcript building on that date. We disagree.

When reviewing sufficiency of the evidence claims, we impose a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. *State* v. *Salz*, 226 Conn. 20, 31, 627 A.2d 862 (1993); *State* v. *Hooks*, 30 Conn. App. 232, 238, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993); *State* v. *Young*, 29 Conn. App. 754, 767, 618 A.2d 65 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993). Second, we determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt. *State* v. *Salz*, supra, 31; *State* v. *Hooks*, supra, 238. In this process of review, the probative force of the evidence is not diminished because it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Salz*, supra, 31; *State* v. *Somerville*, 214 Conn. 378, 390, 572 A.2d 944 (1990); *State* v. *Hooks*, supra, 238–39; *State* v. *Maxwell*, 29 Conn. App. 704, 708, 618 A.2d 43, cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, 509 U.S. 930, 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993).

The state's case was based on circumstantial evidence. There is no distinction between direct and circumstantial evidence as far as probative force is concerned. *State* v. *Heinz*, 193 Conn. 612, 625, 480 A.2d

452 (1984). Indeed, our Supreme Court has stated that circumstantial evidence " 'may be more certain, satisfying and persuasive than direct evidence.' " *State* v. *Taylor*, 153 Conn. 72, 78, 214 A.2d 362 (1965), cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442 (1966), quoting *Michalic* v. *Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960). Where, as here, the identification of the defendant as the burglar is derived from circumstantial evidence, we examine the cumulative impact of a multitude of factors in order to determine whether the identification of the defendant has been satisfactorily established by the circumstantial evidence. *State* v. *Salz*, supra, 226 Conn. 38; *State* v. *Henning*, 220 Conn. 417, 421, 599 A.2d 1065 (1991); *State* v. *Pearl*, 28 Conn. App. 521, 526, 613 A.2d 304 (1992).

The jury's sole province as the trier of fact is to draw all reasonable and logical inferences from the facts as it finds them to exist. *State* v. *Gray*, 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506 U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Hooks*, supra, 30 Conn. App. 239. The jury also has the sole and absolute responsibility to weigh conflicting evidence and to determine the credibility of the witnesses. *State* v. *Pinnock*, 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Hooks*, supra, 239. The issue of the identification of the accused as the perpetrator of the crime is peculiarly one of fact to be resolved by the jury. *State* v. *Smith*, 138 Conn. 196, 201, 82 A.2d 816 (1951). "If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." Id., 200.

As we have stated, the issue of whether the defendant committed the crime was properly a question of fact to be resolved by the jury. Id., 201. A jury could reasonably and logically find that the defendant had unlawfully entered the Catholic Transcript building.

First, the jury could infer that the noise that the Sonitrol employees heard was the sound of the defendant breaking the skylight on the roof of the building. Next, the jury could infer that when Sonitrol telephoned Parmalee, the noise that Parmalee heard was the sound of the defendant breaking the window on the rear wall of the building. The jury could find that the defendant broke a second window because he realized that entry from the skylight involved a fifteen foot drop to the basement floor. The jury could also find that the police arrived at the Catholic Transcript building a few minutes after being called by Sonitrol and that their search revealed that there were no other people in the immediate area of the building. The jury could infer that Dryfe and Cronin inspected the east wall of the building and neither noticed any disturbances or open windows. When Shearer arrived, however, and saw the defendant walking away from the east side of the building, there was a basement window on the east wall of the building that was open. After learning that this window could be opened only from the inside, the jury could infer that the defendant had opened that window and left the building while Cronin was at the rear of the building and Dryfe was on the roof. The final inference that the jury could make linking the defendant to the crime was that the sneaker prints on the roof and in the basement matched the defendant's sneakers and, thus, were left on the premises by the defendant. Considering all of the evidence together, the jury could conclude beyond a reasonable doubt that the defendant was the person who committed the crimes charged.

The defendant's claim that the evidence was insufficient for the jury to determine beyond a reasonable doubt that the defendant was guilty is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.